STATE OF INDIANA    )       IN THE HANCOCK CIRCUIT/SUPERIOR COURT
                   )SS:
COUNTY OF HANCOCK  )      CAUSE NO.  **30D01- 1 7 0 2 -MF- 0 0 1 9 3**

INDIANA PROPERTIES, LLC         )
                         )
        Plaintiff,        )
                         )
  vs.                 )
                         )
U.S. SMALL BUSINESS ADMINISTRATION; )
STATE OF INDIANA, DEPARTMENT OF   )
REVENUE; and                 )
UNITED STATES OF AMERICA, INTERNAL  )
REVENUE SERVICE           )
                         )
       Defendants.

**FILED**
IN HANCOCK SUPERIOR COURT 1

FEB 0 1 2017

*Marcia R Moore*
CLERK

## IN REM COMPLAINT FOR FORECLOSURE ON COMMERCIAL REAL ESTATE

**The Real Estate is commercial property and is not the primary residence of, or used by the owner of the Real Estate for personal, family or household purposes.  This action is, therefore, not subject to the requirements of Indiana Code Section 32-30-10.5-8 through 11.**

Comes now Indiana Properties, LLC ("plaintiff") and for its claim against U.S. Small Business Administration ("SBA"), State of Indiana, Department of Revenue ("IDR"), and United States of America, Internal Revenue Service ("IRS") alleges and says:

1.    Plaintiff is a limited liability company existing under the laws of the State of Nevada.

2.    On July 15, 2004, Kids Corner Daycare, LLC ("Kids Corner") executed a Commercial Loan Agreement in favor of Assurance Partners Bank ("Assurance"), a true, exact and authentic copy of which is attached hereto as Exhibit "1".  The Commercial Loan Agreement was in connection with Loan No. xxxxxx0007.

3.    In exchange for valuable consideration, on July 15, 2004, Kids Corner executed a Commercial Promissory Note in connection with Loan No. xxxxxx0007 in the principal amount of

$184,500.00 (the "Note"), a true, exact and authentic copy of which is attached hereto as Exhibit "2". The Note was payable in interest-only payments for up to six (6) months and then payable in monthly installments of principal and interest with all principal and all accrued interest due December 31, 2024.

4.    On April 17, 2006, Assurance was renamed American Partners Bank ("American"). On January 21, 2008, American was renamed Waterfield Bank ("Waterfield").

5.    The Federal Deposit Insurance Corporation, as receiver for Waterfield Bank, executed an Allonge to the Note effective July 12, 2010 ("Allonge #1"), assigning the Note to American First Federal, Inc.  A true, exact and authentic copy of the Allonge is attached hereto as Exhibit "3".

6.    On November 1, 2010, Kids Corner filed a voluntary petition for bankruptcy relief under Chapter 7 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division, under Case No. 10-16554-RLM-7A, which case was terminated on August 27, 2015.

7.    American First Federal, Inc. executed an Allonge to the Note effective December 28, 2016 ("Allonge #2"), assigning the Note to plaintiff.  A true, exact and authentic copy of the Allonge is attached hereto as Exhibit "4".

8.    Plaintiff is the holder of the Note pursuant to Allonge #2.

9.    There is now due and payable on the Note the unpaid principal balance of $87,463.55, plus interest in the sum of $19,467.99 as of January 18, 2017, plus late fees in the sum of $2,046.72, for a total of $108,978.26, plus interest continuing to accrue on the Note at the rate of 4.16% per annum from and after January 18, 2017, plus attorney fees.

10.    On or about July 15, 2004, Kids Corner was the owner of real estate located in Hancock County, Indiana, more particularly described as follows, to-wit:

A part of the Northwest Quarter of Section 30, Township 15 North, Range 6 East in Hancock County, Indiana, said part being more particularly described as follows:

Commencing at an iron pin marking the southeast corner of said Quarter Section; thence North 00 degrees 15 minutes 47 seconds west along the east line thereof 1426.33 feet to the centerline of U.S. 52 (Brookville Road); thence North 74 degrees 33 minutes 73 seconds west along the centerline of said road 913.65 feet to the Point of Beginning; thence continuing North 74 degrees 33 minutes 37 seconds west 124.20 feet; thence North 13 degrees 56 minutes 23 seconds East 223.00 feet; thence South 74 degrees 33 minutes 37 seconds east 64.19 feet; thence North 13 degrees 56 minutes 23 seconds east 434.02 feet to the south right of way of the B&O Railroad; thence South 73 degrees 44 minutes 04 seconds east along the south right of way line of said railroad 60.04 feet; thence South 13 degrees 56 minutes 23 seconds west 656.15 feet to the Point of Beginning.

This property is commonly known as: 5684 W US 52, New Palestine, IN 46163 ("Real Estate").

11.     On or about July 15, 2004, Kids Corner executed a Real Estate Mortgage ("Mortgage") in favor of Assurance on the Real Estate to secure payment of the indebtedness to Assurance as set forth in the Note.  The Mortgage was recorded on July 20, 2004 as Instrument No. 040010944, in the Office of the Recorder of Hancock County, Indiana.  A true, exact and authentic copy of the Mortgage is attached hereto, made a part hereof, and marked Exhibit "5".

12.     On August 31, 2010, Waterfield (by American First Federal, Inc., as its Attorney in Fact) executed an Assignment of Mortgage which was recorded on September 17, 2010 as Instrument No. 100008522 in the Office of the Recorder of Hancock County, assigning the Mortgage to American First Federal, Inc.  A true, exact and authentic copy of the Assignment of Mortgage is attached hereto, made a part hereof, and marked Exhibit "6".

13.     On April 16, 2011, being in default under the terms of the Note and Mortgage, and during the course of its Chapter 7 bankruptcy proceedings, Kids Corner granted a Deed in Lieu of Foreclosure ("Deed in Lieu")  to plaintiff, which was recorded July 28, 2011, as Instrument No. 110006556 in the Office of the Recorder of Hancock County, Indiana.  A true, exact and authentic copy of the Deed in Lieu is attached hereto as Exhibit "7".

14.     Plaintiff is the owner of the Real Estate pursuant to the Deed in Lieu, however, as noted in the Deed in Lieu, such interest did not merge with any mortgage interest plaintiff held or may acquire.

15.     On December 28, 2016, American First Federal, Inc. executed an Assignment of Mortgage ("American Assignment of Mortgage") which was recorded January 9, 2017 as Instrument No. 201700306 with the Office of the Recorder of Hancock County, assigning the Mortgage to plaintiff.  A true, exact and authentic copy of the American Assignment of Mortgage is attached hereto, made a part hereof, and marked Exhibit "8".

16.     As noted in the American Assignment of Mortgage, the interest conveyed to plaintiff did not merge with any other interest of plaintiff in the Real Estate.

17.     Plaintiff is the holder of the Mortgage pursuant to the American Assignment of Mortgage.

18.     The Mortgage represents a valid first and prior lien against the Real Estate in the amount of the indebtedness due on the Note.

19.     SBA is named as a defendant herein to answer as to any interest it may have in the Real Estate by virtue of, but not limited to, a Mortgage dated October 18, 2004 in favor of Premier Capital Corporation ("Premier") that was recorded on December 8, 2004 as Instrument No. 040017887 in the  Office of the Recorder of Hancock County, Indiana that Premier assigned to the SBA pursuant to an Assignment of Real Estate Mortgage dated October 18, 2004 and recorded December 8, 2004 as Instrument No. 040017888 in the Office of the Recorder of Hancock County, Indiana, and to assert its interest herein or be barred forever, and any such interest in the Real Estate is inferior to the interest of plaintiff.

20.     IDR is named as a defendant herein to answer as to any interest it may have in the Real Estate by virtue of, but not limited to, State of Indiana Tax Warrants against Kids Corner, Nos. 07282147, 07351375, 07554037, 07940642, 08046159, 08126470, 08141660, 08209075, and 08248012,

and to assert its interest herein or be barred forever, and any such interest in the Real Estate is inferior to the interest of plaintiff.

21.     IRS is named as a defendant herein to answer as to any interest it may have in the Real Estate by virtue of, but not limited to, a Notice of Federal Tax Lien against Kids Corner dated August 11, 2010 and recorded August 23, 2010 as Instrument No. 100007385 in the Office of the Recorder of Hancock County, Indiana, and to assert its interest herein or be barred forever, and any such interest in the Real Estate is inferior to the interest of plaintiff.

WHEREFORE, plaintiff prays:

A.     That plaintiff's mortgage lien is declared a valid first and prior *in rem* lien on the Real Estate up to the amounts due and owing on the Note.

B.     For an *in rem* judgment against the Real Estate in the amount due on the Note, plus plaintiff's attorney's fees and the costs of this action, all without relief from valuation and appraisement laws.

C.     For an order foreclosing the lien of plaintiff's Mortgage on the Real Estate barring all of the defendants' equity of redemption and interest in the Real Estate, provided, however, that the SBA and IRS shall retain their redemption rights up to the respective provisions of 28 U.S.C. § 2410.

D.     For an order directing the sale of the Real Estate to be applied first to the costs of this action, next as further ordered by the Court.

E.     For an order directing that the Real Estate shall be sold by the Sheriff of Hancock County to satisfy the sums found due to plaintiff as soon as such sale can be made under the laws of the jurisdiction governing the sale of mortgaged property under foreclosure and in the case of the sale of the Real Estate, a deed or deeds shall be issued according to the laws of the State of Indiana, and that plaintiff be and hereby is empowered to bid for the Real Estate or any part

thereof with the indebtedness due plaintiff, said indebtedness to be credited with the amount paid

by plaintiff to the judgment, said sale(s) to be made without relief from valuation and

appraisement laws.

      F.      For an entry of judgment directing the sale of the Real Estate, at the option of

plaintiff, by public auction pursuant to I.C. 32-29-7-4, if economically feasible.

      G.      For all other relief just and proper in the premises.


                        RUBIN & LEVIN, P.C.
                        Attorneys for Plaintiff

                        By_____
                              Reynold T. Berry
                              Atty. No. 25482-49

RUBIN & LEVIN, P.C.
135 N. Pennsylvania St., Suite 1400
Indianapolis, IN 46204
(317) 634-0300 - FAX No. (317) 263-9410
RTB/BNH/agm/js
G:\WP80\GENLIT\American First-Kids Corner-83913601\Complaint.wpd

| BORROWER NAME AND ADDRESS | LENDER NAME AND ADDRESS | LOAN DESCRIPTION |
|---|---|---|
| Kids Corner Daycare, LLC<br>4663 S 700 W<br>New Palestine, IN 46163 | Assurance Partners Bank<br>12400 N. Meridian Street, Suite 120<br>Carmel, IN 46032-4600 | Number ████ 8607<br>Amount $ 184,500.00<br>Date 07-16-2004 |

☐ Refer to the attached Signature Addendum, incorporated herein, for additional Borrowers and their signatures.

## COMMERCIAL LOAN AGREEMENT

**LOAN STRUCTURE.** This Commercial Loan Agreement (Agreement) contemplates ☐ a single advance term Loan ☒ a multiple advance draw Loan ☐ a revolving multiple advance draw Loan. The principal balance will not exceed $ 184,500.00 _____. Borrower will pay down a revolving draw Loan's outstanding Principal to $ _____ (Pay Down Balance) _____ (Time Period). This Loan is for ☐ agricultural ☒ business purposes.

☐ Borrower may not voluntarily prepay the Loan in full at any time. ☒ Borrower may prepay the Loan under the following terms and conditions (Any partial prepayment will not excuse any later scheduled payments until the Loan is paid in full.): Thirty days advance written notice.

☒ **LATE CHARGES.** If a payment is made more than _____ 10 _____ days after it is due, Borrower will pay a late charge of 5.000% of the late amount with a min of $15.50 _____.

**FEES.** Borrower agrees to pay the following fees in connection with this Loan at closing or as otherwise requested by Lender: Origination fee - $1,846.00; Appraisal fee - $500.00; Title Insurance - $100.00; Recording fees - $60.00; Document prep fees - $500.00; Legal fees - $500.00 Permanent loan closing fee - $512.50; SBA 504 fees - $2,173.00

**REQUESTS FOR ADVANCES.** Borrower authorizes Lender to honor a request for an advance from Borrower or any person authorized by Borrower. The requests for an advance must be in writing, by telephone, or any other manner agreed upon by Borrower and Lender, and must specify the requested amount and date and be accompanied with any agreements, documents, and instruments that Lender requires for the Loan. Lender will make same day advances, on any day that Lender is open for business, when the request is received before 10 days _____ (Advance Cut-Off Time). Lender will disburse the advance into Borrower's demand deposit account (if any), account number _____ , or in any other agreed upon manner. All advances will be made in United States dollars.

☐ These requests must be made by at least _____ (Number Required To Draw) persons, acting together, of those persons authorized to act on Borrower's behalf.
☒ Advances will be made in the amount of at least $ 1,000.00 _____ (Minimum Amount Of Advance).
☐ Advances will be made no more frequently than _____ (Minimum Frequency Of Advance).
☒ Discretionary Advances. Lender will make all Loan advances at Lender's sole discretion.
☐ Obligatory Advances. Lender will make all Loan advances subject to this Agreement's terms and conditions.

**FINANCIAL INFORMATION.** Borrower will prepare and maintain Borrower's financial records using consistently applied generally accepted accounting principles then in effect. Borrower will provide Lender with financial information in a form acceptable to Lender and under the following terms.

A. Frequency. Annually, Borrower will provide to Lender Borrower's financial statements, tax returns, annual internal audit reports or those prepared by independent accountants within 90 _____ days after the close of each fiscal year. Any annual financial statements will be ☐ audited statements. ☐ reviewed statements. ☒ compiled statements.
  ☐ Borrower will provide Lender with interim financial reports on a _____ (Monthly, Quarterly) basis, and within _____ days after the close of this business period. Interim financial statements will be ☐ audited ☐ reviewed ☐ compiled statements.
B. Requested Information. Borrower will provide Lender with any other information about Borrower's operations, financial affairs and condition within _____ days after Lender's request.
☐ C. Leverage Ratio. Borrower will maintain at all times a ratio of total liabilities to tangible net worth, determined under consistently applied generally accepted accounting principles, of _____ (Total Liabilities to Tangible Net Worth Ratio) or less.
☐ D. Minimum Tangible Net Worth. Borrower will maintain at all times a total tangible net worth, determined under consistently applied generally accepted accounting principles, of $ _____ (Minimum Tangible Net Worth) or more. Tangible net worth is the amount by which total assets exceed total liabilities. For determining tangible net worth, total assets will exclude all intangible assets, including without limitation goodwill, patents, trademarks, trade names, copyrights, and franchises, and will also exclude any accounts receivable that do not provide for a repayment schedule.
☐ E. Minimum Current Ratio. Borrower will maintain at all times a ratio of current assets to current liabilities, determined under consistently applied generally accepted accounting principles, of _____ (Minimum Current Ratio) or more.
☐ F. Minimum Working Capital. Borrower will maintain at all times a working capital, determined under consistently applied generally accepted accounting principles by subtracting current liabilities from current assets, of $ _____ (Minimum Working Capital) or more. For this determination, current assets exclude _____
  (Excluded Current Assets). Likewise, current liabilities include (1) all obligations payable on demand or within one year after the date on which the determination is made, and (2) final maturities and sinking fund payments required to be made within one year after the date on which the determination is made, but exclude all liabilities or obligations that Borrower may renew or extend to a date more than one year from the date of this determination.

**ATTACHMENTS.** The following documents are incorporated by reference into this Agreement: ☐ Asset Based Financing Agreement addendum dated _____ ☒ Commercial Security Agreement addendum dated 07-16-2004 ☐ Other _____

**ADDITIONAL TERMS:**
☒ **ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT. BY SIGNING THIS AGREEMENT, THE PARTIES AFFIRM THAT NO UNWRITTEN ORAL AGREEMENT EXISTS BETWEEN THEM.**

**SIGNATURES.** By signing under seal, I agree to all the terms and conditions beginning on page 1 through the bottom of page 2 of this Agreement. Borrower also acknowledges receipt of a copy of this Agreement.

**BORROWER:**
Kids Corner Daycare, LLC
Entity Name

_X_ _____ (Seal)
Signature Kevin S. Dhonau, Member   Date 7-15-04

_X_ _____ (Seal)
Signature Kristina L. Dhonau, President   Date 7-15-04

_____ (Seal)
Signature   Date

_____ (Seal)
Signature   Date

**LENDER:**
Assurance Partners Bank
Entity Name

_X_ _____ (Seal)
Signature JAMES A. RUSH, PRESIDENT   Date

_____ (Seal)
Signature   Date

COMMERCIAL LOAN AGREEMENT to be used with Form COMM-NOTE   NOT TO BE USED FOR LOANS SUBJECT TO CONSUMER LENDING LAWS
ExperØ ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form COMM-AGREX 6/15/2001   (page 1 of 2)

EXHIBIT "1" (1 of 2)

**DEFINITIONS.** In this Agreement, the following terms have the following meanings.

**Accounting Terms.** Accounting terms that are not specifically defined will have their customary meanings under consistently applied generally accepted accounting principles.

**Loan.** Loan refers to all advances made under the terms of this Agreement.

**Loan Documents.** Loan Documents include this Agreement and all documents prepared pursuant to the terms of this Agreement including all present and future promissory notes (Notes), security instruments, guaranties, and supporting documentation as modified, amended or supplemented.

**Property.** Property is any collateral, real, personal or intangible, that secures Borrower's performance of the obligations of this Agreement.

**ADVANCES.** To the extent permitted by law, Borrower will indemnify Lender and hold Lender harmless for reliance on any request for advance that Lender reasonably believes to be genuine. Lender's records are conclusive evidence as to the number and amount of advances and the Loan's unpaid principal and interest. If any advance results in an overadvance (when the total amount of the Loan exceeds the principal balance) Borrower will pay the overadvance, as requested by Lender. Regarding Borrower's demand deposit account(s) with Lender, Lender may, at its option, consider presentation for payment of a check or other charge exceeding available funds as a request for an advance under this Agreement. Any such payment by Lender will constitute an advance on the Loan.

**CONDITIONS.** Borrower will satisfy all of the following conditions before Lender makes any advances under this Agreement. If this Agreement provides for discretionary advances, satisfaction of these conditions does not commit Lender to making advances.

**No Default.** There has not been a default under the Loan Documents nor would a default result from making the advance.

**Information.** Borrower has provided all required documents, information, certifications and warranties, all properly executed on forms acceptable to Lender.

**Inspections.** Borrower has accommodated, to Lender's satisfaction, all inspections.

**Conditions and Covenants.** Borrower has performed and complied with all conditions required for an advance and all covenants in the Loan Documents.

**Warranties and Representations.** The warranties and representations contained in this Agreement are true and correct at the time of making the advance.

**Financial Statements.** Borrower's most recently delivered financial statements and reports are current, complete, true and accurate in all material respects and fairly represent Borrower's financial condition.

**Bankruptcy Proceedings.** No proceeding under the United States Bankruptcy Code has been commenced by or against Borrower or any of Borrower's affiliates.

**WARRANTIES AND REPRESENTATIONS.** Borrower makes these warranties and representations which will continue as long as this Agreement is in effect.

**Power.** Borrower is duly organized, validly existing and in good standing in all jurisdictions in which Borrower operates. Borrower has the power and authority to enter into this transaction and to carry on its business or activity as it is now being conducted. All persons who are required by applicable law and the governing documents of Borrower have executed and delivered to Lender this Agreement and other Loan Documents.

**Authority.** The execution, delivery and performance of this Agreement and the obligation evidenced by the Loan Documents are within Borrower's duly authorized powers, has received all necessary governmental approval, will not violate any provision of law or order of court or governmental agency, and will not violate any agreement to which Borrower is a party or to which Borrower or Borrower's property is subject.

**Name and Place of Business.** Other than previously disclosed in writing to Lender, Borrower has not changed its name or principal place of business within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Borrower will not use any other name and will preserve Borrower's existing name, trade names and franchises.

**No Other Liens.** Borrower owns or leases all property that is required for its business and except as disclosed, the property is free and clear of all liens, security interests, encumbrances and other adverse interests.

**Compliance With Laws.** Borrower is not violating any laws, regulations, rules, orders, judgments or decrees applicable to Borrower or its property, except as disclosed to Lender.

**Financial Statements.** Borrower represents and warrants that all financial statements Borrower provides fairly represent Borrower's financial condition for the stated periods, are current, complete, true and accurate in all material respects, include all direct or contingent liabilities, and that there has been no material adverse change in Borrower's financial condition, operations or business since the date the financial information was prepared.

**COVENANTS.** Until the Loan and all related debts, liabilities and obligations under the Loan Documents are paid and discharged, Borrower will comply with the following terms, unless Lender waives compliance in writing.

**Inspection and Disclosure.** Borrower will allow Lender or its agents to enter any of Borrower's premises during normally agreed upon times, to do the following: (1) inspect, audit, review and obtain copies from Borrower's books, records, orders, receipts, and other business related data; (2) discuss Borrower's finances and business with anyone who claims to be Borrower's creditor; (3) inspect Borrower's Property, audit for the use and disposition of the Property's proceeds; or do whatever Lender decides is necessary to preserve and protect the Property and Lender's interest in the Property. As long as this Agreement is in effect, Borrower will direct all of Borrower's accountants and auditors to permit Lender to examine and make copies of Borrower's records in their possession, and to disclose to Lender any other information that they know about Borrower's financial condition and business operations. Lender may provide Lender's regulator with required information about Borrower's financial condition, operation and business or that of Borrower's parent, subsidiaries or affiliates.

**Business Requirements.** Borrower will preserve and maintain its present existence and good standing in jurisdictions where Borrower is organized and operates. Borrower will continue its business or activities as presently conducted, by obtaining licenses, permits and bonds where needed. Borrower will obtain Lender's prior written consent before engaging in any business or any business that is materially different from its present business.

**Compliance with Laws.** Borrower will not violate any laws, regulations, rules, orders, judgments or decrees applicable to Borrower or Borrower's property, except for those which Borrower challenges in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should Borrower lose. On request, Borrower will provide Lender with written evidence that Borrower has fully and timely paid taxes, assessments and other governmental charges levied or imposed on Borrower and its income, profits and property. Borrower will adequately provide for the payment of taxes, assessments and other charges that have accrued but are not yet due and payable.

**New Organizations.** Borrower will obtain Lender's written consent before organizing, merging into, or consolidating with an entity; acquiring all or substantially all of the assets of another; or materially changing legal structure, management, ownership or financial condition.

**Other Liabilities.** Borrower will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations except debt in existence on the date of this Agreement and fairly disclosed to Lender; debt subordinated in payment to Lender on terms acceptable to Lender; accounts payable incurred in the ordinary course of business and paid under customary trade terms or contested in good faith with reserves satisfactory to Lender; or as otherwise agreed to by Lender.

**Notice.** Borrower will promptly notify Lender of any material change in financial condition, a default under the Loan Documents, or a default under any agreement with a third party which materially and adversely affects Borrower's property, operations or financial condition.

**Dispose of No Assets.** Without Lender's prior written consent, Borrower will not sell, lease, assign, or otherwise distribute all or substantially all of its assets. This may include without limitation death insurance with insurers in amounts and coverages that are acceptable to Lender and customary with industry practice. This may include without limitation credit insurance, insurance policies for public liability, fire, hazard and extended risk, workers compensation, and, at Lender's request, business interruption and/or rent loss insurance. Borrower may obtain insurance from anyone Borrower wants that is acceptable to Lender. Borrower's choice of insurance provider will not affect the credit decision or interest rate. At Lender's request, Borrower will deliver to Lender certified copies of all of these insurance policies, binders or certificates. Borrower will obtain and maintain a mortgagee or loss payee endorsement for these endorsements are available. Borrower will require all insurance policies to provide at least 10 days prior written notice to Lender of cancellation or modification. Borrower consents to Lender using or disclosing information relative to any contract of insurance required for the Loan for the purpose of replacing this insurance. Borrower also authorizes its insurer and Lender to exchange all relevant information related to any contract of insurance executed as required by any Loan Documents.

**Property Maintenance.** Borrower will keep property that is personal or useful in its business in good working condition by making all needed repairs, replacements and improvements and by making payments due on the property.

**DEFAULT.** If the Loan is payable on demand, Lender may demand payment at any time whether or not any of the following events have occurred. Borrower will be in default if any one or more of the following occur. (1) Borrower fails to make a payment in full when due. (2) Borrower makes an assignment for the benefit of creditors or becomes insolvent, either because Borrower's liabilities exceed its assets or Borrower is unable to pay debts as they become due; or Borrower petitions for protection under any bankruptcy, insolvency or debtor relief laws, or is the subject of such a petition or action and fails to have the petition or action dismissed within a reasonable period of time. (3) Borrower fails to perform any condition or to keep any promise or covenant on this Agreement or any debt or agreement Borrower has with Lender. (4) A default occurs under the terms of any instrument evidencing or pertaining to this Agreement. (5) If Borrower is a producer of crops, Borrower fails to plant, cultivate and harvest crops in due season. (6) Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained by federal law. (7) Anything else happens that either significantly impairs the value of the Property or, unless controlled by the New Jersey Banking Law, causes Lender to reasonably believe that Lender will have difficulty collecting the Loan.

**REMEDIES.** After Borrower defaults, and after Lender gives any legally required notice and opportunity to cure, Lender may at its option use any and all remedies Lender has under state or federal law or in any of the Loan Documents, including, but not limited to, terminating any commitment or obligation to make additional advances or making all or any part of the amount owing immediately due. Lender may set-off any amount due and payable under the terms of the Loan against Borrower's right to receive money from Lender, unless prohibited by applicable law. Except as otherwise required by law, by choosing any one or more of these remedies Lender does not give up Lender's right to use any other remedy. Lender does not waive a default if Lender chooses not to use a remedy, and may later use any remedies if the default continues or occurs again.

**COLLECTION EXPENSES AND ATTORNEYS' FEES.** To the extent permitted by law, Borrower agrees to pay all expenses of collection, enforcement and protection of Lender's rights and remedies under this Agreement. Expenses include, but are not limited to, reasonable attorneys' fees including attorney fees as permitted by the United States Bankruptcy Code, court costs and other legal expenses. These expenses will bear interest from the date of payment until paid in full at the contract interest rate then in effect for the Loan. FL: Attorneys' fees will be 10 percent of the principal sum due or a larger amount as the court judges as reasonable and just. GA: Attorneys' fees will be 15 percent of the principal and interest owing.

**GENERAL PROVISIONS.** This Agreement is governed by the laws of the jurisdiction where Lender is located, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located.

**Joint And Individual Liability And Successors.** Each Borrower, individually, has the duty of fully performing the obligations on the Loan. Lender can use all or any of the Borrowers upon breach of performance. The duties and benefits of this Loan will bind and benefit the successors and assigns of Borrower and Lender.

**Amendment, Integration And Severability.** The Loan Documents may not be amended or modified by oral agreement. Borrower agrees that any party signing this Agreement as Borrower is authorized to modify the terms of the Loan Documents. Borrower agrees that Lender may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modification, substitutions, or future advances. The Loan Documents are the complete and final expression of the understanding between Borrower and Lender. If any provision of the Loan Documents is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

**Waivers And Consent.** Borrower, to the extent permitted by law, consents to certain actions Lender may take, and generally waives defenses that may be available based on these actions or based on the status of a party to the Loan. Lender may renew or extend payments on the Loan. Lender may release any borrower, guarantor, surety, or any other co-signer. Lender may release, substitute, or impair any Property securing the Loan. Lender's course of dealing, or Lender's forbearance from, or delay in, the exercise of any of Lender's rights, remedies, privileges, or right to insist upon Borrower's strict performance of any provisions contained in the Loan Documents, will not be construed as a waiver by Lender, unless the waiver is in writing and signed by Lender. Lender may participate or syndicate the Loan and share any information that Lender decides is necessary about Borrower and the Loan with the other participants. **Interpretation.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement. Unless otherwise indicated, the terms of this Agreement shall be construed in accordance with the Uniform Commercial Code.

**Notice.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in this Agreement, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. Time is of the essence.

Experian  ©1998 Bankers Systems, Inc., St. Cloud, MN Form CONM-AGREE 8/16/2002

EXHIBIT "1" (2 of 2)

| BORROWER NAME AND ADDRESS | LENDER NAME AND ADDRESS | LOAN DESCRIPTION |
|---|---|---|
| Kids Corner Daycare, LLC | Assurance Partners Bank | Number ____ 9007 |
| 4053 S 700 W | 12400 N. Meridian Street, Suite 120 | Amount $ 184,500.00 |
| New Palestine, IN 46163 | Carmel, IN 46032-4600 | Date 07-15-2004 |

☐ Refer to the attached Signature Addendum, incorporated herein, for additional Borrowers and their signatures.

## COMMERCIAL PROMISSORY NOTE

**DATE.** The date of this Promissory Note (Note) is 07-15-2004.

**GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement between Lender and Borrower dated 07-15-2004 as modified, amended, or supplemented. All definitions of terms in the Commercial Loan Agreement apply to this Note as well. Upon execution of this Note, Borrower represents that Borrower has reviewed and is in compliance with all Loan Documents and the Commercial Loan Agreement.

**PROMISE TO PAY.** For value received, Borrower promises to pay Lender or Lender's order, at Lender's address, ☒ $ 184,500.00 _____ (Principal).

☐ $ _____ (Principal) or the Borrowing Base, whichever is less.

☐ **Single Advance.** Borrower will receive all of this Principal in one advance. No additional advances are contemplated under this Note.

☒ **Multiple Advances.** The Principal amount stated above is the maximum amount of Principal that Borrower may borrow under this Note. On 07-15-2004 Borrower will receive $ 147,510.60 _____ and future advances are contemplated. The conditions for future advances are stated in the Commercial Loan Agreement.

**INTEREST.** Borrower agrees to pay interest on the outstanding Principal balance of this Note at the rate of 5.750 _____ percent per year until 07-18-2004 _____ .

☒ **Variable Rate.** This rate may then change as follows. The future rate will be 1.500% above the highest rate on corporate loans posted by at least 75% of the USA's thirty largest banks known as the Wall Street Journal Prime Rate. The rate may change as often as every month. The rate may never be higher than 18.000% or less than 4.000%. A change in the interest rate will affect the amount of each payment and the amount due at maturity.

☐ **Post Maturity/Default Interest.** Borrower agrees to pay interest on the unpaid balance of this Note owing after _____

**MATURITY/DEMAND.** This Note is due on 12-31-2004 _____

**PAYMENT.** Borrower agrees to pay this Note as follows unless and until demand is made (if applicable):

Interest only payments until receipt of proceeds from the sale of the SBA Debenture totaling $92,000.00 per commitment from U. S. Small Business Administration or no later than six months from the date of this Note. At which time interest rate shall be based upon 1 Year Treasury index plus 3.50% and amortized on remaining balance for a term of 20 years payable monthly. The interest rate will change annually and will take effect on the same day with or without notice to Borrower. Rate calculations shall be rounded to the nearest 0.125.

All payments must be made in United States dollars. Each payment Borrower makes on this Note will be applied first to any charges Borrower owes other than Principal and Interest, then to Interest that is due, and finally to Principal that is due. If Lender and Borrower agree to a different application of payments, that application will be described on this Note. The actual amount of Borrower's final payment will depend upon Borrower's payment record.

**USE OF PROCEEDS.** Purchase of property

**WAIVERS AND CONSENT.** Borrower waives protest, presentment for payment, demand, and notices of acceleration, intent to accelerate, and dishonor (if allowed by law).

☐ **ADDITIONAL TERMS.**

**SIGNATURES.** By signing under seal, Borrower agrees to the terms contained in this Note. Borrower also acknowledges receipt of a copy of this Note.

**BORROWER:**

Kids Corner Daycare, LLC
Entity Name

| Signature Kevin S. Dhonau, Member   7-15-07  (Seal) | (Seal) |
|---|---|
| | Signature     Date |
| Signature Kristina L. Dhonau, President   7/15/04  (Seal) | (Seal) |
| | Signature     Date |

**LENDER:**

Assurance Partners Bank
Entity Name

| Signature JAMES A. RUSH, PRESIDENT   7/15/04  (Seal) | (Seal) |
|---|---|
| | Signature     Date |

COMMERCIAL PROMISSORY NOTE (not to be used for FNMA, FHLMC, FHA or VA or for consumer loans)
Experts © 1999, 2001 Bankers Systems, Inc., St. Cloud, MN Form COMM-NOTE 9/13/2001   V04.20   (page 1 of 1)

EXHIBIT "2" (1 of 1)

## ALLONGE

This Allonge is attached to and made a part of that certain Promissory Note dated **July 15, 2004** with all extensions and modifications, if any, executed and given by **LLC Kid's Corner Daycare** in the original amount of One Hundred Eighty Four Thousand Five Hundred Dollars and 00/100 Dollars ($184,500.00). It is to be read together with and is hereby incorporated by reference in the attached instrument and constitutes an integral part thereof.

Effective this 12th day of July, 2010.

Pay to the order of

**AMERICAN FIRST FEDERAL, INC.**
Without Recourse

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for Waterfield Bank,
Germantown, MD

By: _____
Name: Alan J. Lindquist
Title: Attorney-in-Fact

## ALLONGE

This Allonge is attached to and made a part of that certain Promissory Note dated July 15, 2004 together with all extensions and modifications, if any, executed and given by **Kids Corner Daycare, LLC** to **Assurance Partners Bank,** in the original amount of **$184,500.00**. It is to be read together with and is hereby incorporated by reference in the attached instrument and constitutes an integral part thereof.

Pay to the order of Indiana Properties, LLC, as is, where is, with all faults and without recourse and without any representations or warranties of any kind, whether express or implied, oral or written. Further, this promissory note allonge is not intended to and shall not be deemed to effect a merger of the debt and mortgage security interest thereunder with any other interests of the assignee, Indiana Properties, LLC.

Effective this 28th day of December, 2016.

**American First Federal, Inc.**

By: _____

**Name:** _Alan J. Lindquist_____

**Title:** _Vice President_____



CAROLYN GRASS          9P
HANCOCK COUNTY RECORDER
SKS Date 07/20/2004    Time 15:22:37
FEE:                        25.00
I 040010944            Page 1 of 9

—— State of Indiana ——————————Space Above This Line For Recording Data ——

# REAL ESTATE MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is <u>07-15-2004</u>
The parties and their addresses are:
MORTGAGOR: Kids Corner Daycare, LLC, Corporation
4053 S 700 W
New Palestine, IN 46163

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.
LENDER: Assurance Partners Bank
Organized and existing under the laws of the United States of America
12400 N. Meridian Street, Suite 120
Carmel, IN 46032-4600

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, mortgages and warrants to Lender the following described property: A part of the Northwest Quarter of Section 30, Township 15 North, Range 6 East in Hancock County, Indiana, said part being more particulary described as follows: Commencing at an iron pin marking the Southeast corner of said Quarter Section; thence North 00 deg 15 min 47 s West along the East line thereof 1426.33 feet to the centerline of U.S. 52 (Brookville Road); thence North 74 deg 33 min 73 s West along the centerline of said road 913.85 feet to the Point of Beginning; thence continuing North 74 deg 33 min 37 s West 124.20 feet; thence North 13 deg 56 min 23 s East 223.00 feet; thence South 74 deg 33 min 37 s East 64.19 feet; thence North 13 deg 56 min 23 s East 434.02 feet to the South Right of Way of the B&O Railroad; thence South 73 deg 44 min 04 s East along the South Right of Way line of said railroad 60.04 feet; thence South 13 deg 56 min 23 s West 656.16 feet to the Point of Beginning.

The property is located in <u>Hancock</u> ............................ at <u>5884 West U.S. 52</u>
                                      (County)
............., <u>New Palestine</u> ............., Indiana <u>46163</u>
    (Address)              (City)                        (Zip Code)

INDIANA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT
(NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)
Expere! ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IN 1/7/2003

*(page 1 of 9)*

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed ($ 184,500.00 ) . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

   B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
   C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

   This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, mortgage and warrant the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to

*(page 2 of 9)*

Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:
    A. A beneficial interest in Mortgagor is sold or transferred.
    B. There is a change in either the identity or number of members of a partnership or similar entity.
    C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.
    However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall continue as long as the Secured Debt remains outstanding:
    A. Mortgagor is duly organized and validly existing in Mortgagor's state of incorporation or organization. Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.
    B. The execution, delivery and performance of this Security Instrument by Mortgagor and the obligations evidenced by the Secured Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than previously disclosed in writing to Lender, Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.
    No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent.
    Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps

Experti ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IN 1/7/2003

necessary to protect Lender's security interest in the Property, including completion of the construction.

14. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys, mortgages and warrants to Lender as additional security all the right, title and interest in the following (Property).

    A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).

    B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Mortgagor will be in default if any of the following occur:

    A. Any party obligated on the Secured Debt fails to make payment when due;

    B. A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt;

    C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;

    D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any other person or entity obligated on the Secured Debt;

Exper̲e̲™  ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-IN  1/7/2003

EXHIBIT "5" (4 of 9)

E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;

F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or

G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.
At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.
Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law.

Expere™ ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-IN 1/7/2003

Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Mortgagor agrees to maintain insurance as follows:

A. Mortgagor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

*(page 6 of 9)*

Experⓔ  ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-IN 1/7/2003

Unless otherwise agreed in writing, all insurance proceeds shall be applied to restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

26. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

27. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives and releases any and all rights and remedies Mortgagor may now have or acquire in the future relating to redemption, reinstatement, and the marshalling of liens and assets. Mortgagor waives all rights of valuation and appraisement.

28. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Security Instrument:

 ☒ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

 ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

Exper~ ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IN 1/7/2003

*(page 7 of 9)*

☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Mortgagor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property"). Lender may file a financing statement signed by Lender instead of Mortgagor with appropriate public officials.

☐ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term "Property"). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices. Lender may file a financing statement signed by Lender instead of Mortgagor with appropriate public officials.

☒ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Security Instrument also suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Separate Assignment.** The Mortgagor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Entity Name: Kids Corner Daycare, LLC

_____  7-15-04

(Signature) Kevin S. Dhonau, Member _Member_  (Date)

_____  7/15/04

(Signature) Kristina L. Dhonau, President  (Date)

_____  _____

(Signature)  (Date)  (Signature)  (Date)

Exper™ ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IN 1/7/2003

END OF DOCUMENT

**ACKNOWLEDGMENT:**

(Individual)

STATE OF _____, COUNTY OF _____ } ss.
Before me, _____, a Notary Public this _____ day of
_____, _____ acknowledged the execution of the annexed mortgage.
My commission expires:

(Notary Public) _____

(Notary's County) _____

(Business or Entity Acknowledgment)

STATE OF Indiana _____, COUNTY OF Marion _____ } ss.
Before me, Nora L. Calderon _____, a Notary Public this 15th day of
July 2004 _____, Kevin S. Dhonau, Member; Kristina L. Dhonau, President
                                                                                    (Titles)
of Kids Corner Daycare; LLC _____ (Name of Business Entity)
a Indiana Corporation _____ acknowledged the execution of the
annexed mortgage of the business or entity.
My commission expires:

(Notary Public) Nora L. Calderon

(Notary's County) _____

SEAL

NORA L. CALDERON
Res. of Marion County
Comm. Exp. 2-25-08

David Sewell

This instrument was prepared by (name, address): Assurance Partners Bank
12400 N. Meridian Street, Suite 120
Carmel, IN 46032-4600

(page 9 of 9)

Exper&. ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IN 1/7/2003

EXHIBIT "5" (9 of 9)

100008522 ASMT        $12.00
09/17/2010 11:52:50A 1 PGS
Sharon Shambaugh
Hancock County Recorder IN
Recorded as Presented

Prepared by and after recording return to:
American First Federal, Inc.
c/o First Commerce, LLC
PO Box 920
Lake Oswego, OR 97034

## ASSIGNMENT OF MORTGAGE

**FOR VALUE RECEIVED,** the undersigned grants, assigns and transfers to AMERICAN FIRST FEDERAL INC., a Nevada Corporation, whose address is P.O. Box 5460, Fallon, Nevada 89407, all its beneficial interest under the Mortgage dated July 15, 2004, made by and between Kids Corner Daycare, LLC and Assurance Partners Bank, recorded on July 20, 2004, as instrument number 040010944, in the official records of Hancock County, Indiana.

Together with the note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under the Mortgage.

This Assignment is made "as is", "where is", "with all faults" and without recourse and without any representations or warranties, and pursuant to the loan sale agreement dated June 11, 2010.

Date: August 31, 2010 _____

Waterfield Bank, Germantown, MD as successor in interest to Assurance Partners Bank,

100008521

By: American First Federal Inc. As Its Attorney in Fact Pursuant to the Limited Power of Attorney Dated July 12, 2010

Witness: _____
Brent Johnson

By: _____

Witness: _____
Kimberly A Depuy

Name: ___Alan J. Lindquist___

Loan No. 927-013

Title: ___Vice President___

STATE OF OREGON          )
COUNTY OF CLACKAMAS      )

The foregoing instrument was acknowledged before me this 31st day of August 2010, by Alan J. Lindquist in his capacity as the Vice President of American First Federal, Inc. He executed the foregoing Assignment of Mortgage on behalf of Waterfield Bank, Germantown, MD as successor in interest to American Partners Bank, pursuant to Limited Power of Attorney dated July 12, 2010.  Alan J. Lindquist is personally known to me.



OFFICIAL SEAL
JENNIE MARIE HOAGLAND
NOTARY PUBLIC - OREGON
COMMISSION NO. 441787
MY COMMISSION EXPIRES AUGUST 10, 2013

Notary Public _____

EXHIBIT "6" (1 of 1)

**Document Prepared by:**
Ginger Skinner
First Commerce, LLC
PO Box 920
Lake Oswego, OR 97034

**After recording, return to:**
Indiana Properties, LLC
c/o First Commerce, LLC
PO Box 920
Lake Oswego, OR 97034

DULY ENTERED
FOR TAXATION

JUL 28 2011

*Robin D. Lowder*
Auditor of Hancock County

**Send tax statements to:**
Indiana Properties
c/o First Commerce, LLC
PO Box 920
Lake Oswego, OR 97034

### DEED IN LIEU OF FORECLOSURE

| | |
|---|---|
| Grantor: | Kids Corner Daycare, LLC<br>4053 S 700 W<br>New Palestine, IN 46163 |
| Grantee: | Indiana Properties, LLC<br>PO Box 5460<br>Fallon, NV 89407 |

```
110006556 OTHRDEED    $18.00
07/28/2011 03:15:05P 2 PGS
Debra Carnes
Hancock County Recorder IN
Recorded as Presented
```

WHEREAS, on July 20, 2004, Instrument No. I 040010944 was recorded in Hancock County, Indiana.
WHEREAS, on July 12, 2010, the rights under this Instrument were assigned to American First Federal, Inc.

NOW THEREFORE, FOR VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged, the Grantor hereby deeds to the Grantee in lieu of foreclosure, the following described real property in the County of Hancock and State of Indiana:

     See Exhibit A - Commonly known as 5684 W US 52, New Palestine, IN.

It is expressly understood and agreed that the execution and delivery of this instrument shall not in any manner be deemed to be a merger with, or the extinguishment of, any mortgage.

In Witness Whereof, we hereunto set our hands and seal this 16 day of April, 2011.

IN THE PRESENCE OF:

GRANTOR:

Name: _____

Name: Kevin S. Dhonau, as Member of Kids
Corner Daycare, LLC

Name: _____

Name: Kristina L. Dhonau as Member of Kids
Corner Daycare, LLC

STATE OF INDIANA )
COUNTY OF _____ )

On this 16th day of April, 2011, before me, the undersigned Notary Public, personally appeared Kevin S. Dhonau and Kristina L. Dhonau as Members of Kids Corner Daycare, LLC, to me known to be the individuals described in and who executed the Deed in Lieu of Foreclosure, and acknowledged that they signed the Deed in Lieu of Foreclosure as their free and voluntary act and deed.

By: _____
Notary Public, State of Indiana
My commission expires: _____

Nancy A. Cooksey
Notary Public, State of Indiana
Hancock County
My Commission Expires 11-4-2014

NOTARY PUBLIC
SEAL
INDIANA

SALES DISCLOSURE APPROVED
HANCOCK COUNTY ASSESSOR

EXHIBIT "7" (1 of 2)

END OF DOCUMENT

Exhibit "A"

A part of the Northwest Quarter of Section 30, Township 15 North, Range 6 East in Hancock County, Indiana, said part being more particularly described as follows:

Commencing at an iron pin marking the Southeast corner of said Quarter Section; thence North 00 degrees 15 minutes 47 seconds West along the East line thereof 1426.33 feet to the centerline of U. S. 52 (Brookville Road); thence North 74 degrees 33 minutes 73 seconds West along the centerline of said road 913.65 feet to the Point of Beginning; thence continuing North 74 degrees 33 minutes 37 seconds West 124.20 feet; thence North 13 degrees 56 minutes 23 seconds East 223.00 feet; thence South 74 degrees 33 minutes 37 seconds East 64.19 feet; thence North 13 degrees 56 minutes 23 seconds East 434.02 feet to the South Right of Way of the B&O Railroad; thence South 73 degrees 44 minutes 04 seconds East along the South Right of Way line of said railroad 60.04 feet; thence South 13 degrees 56 minutes 23 seconds West 656.15 feet to the Point of Beginning.

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law. _George St._

201700306 ASMT        $14.00
01/09/2017 11:23:40A 2 PGS
Debra Carnes
Hancock County Recorder IN
Recorded as Presented

Cross reference: Instrument No. I040010944

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, American First Federal Inc., a Nevada corporation ("Assignor"), hereby sells, assigns, transfers and sets over without recourse upon it to Indiana Properties, LLC, a Nevada limited liability company with a mailing address c/o First Commerce, LLC, PO Box 920, Lake Oswego, OR 97034 ("Assignee"), that certain mortgage dated July 15, 2004, executed by Kids Corner Daycare, LLC, Corporation in favor of Assurance Partners Bank, together with all documents evidencing the indebtedness secured thereby. Said mortgage was recorded on July 20, 2004, in the Office of the Recorder of Hancock County, Indiana, as Instrument No. I040010944, and assigned to Assignor pursuant to an Assignment of Mortgage dated August 31, 2010 and recorded September 17, 2010 in the Office of the Recorder of Hancock County, Indiana, as Instrument No. 100008522.

This assignment is made without recourse, representations or warranties of any kind. Further, this assignment of mortgage is not intended to and shall not be deemed to effect a merger of the mortgage interest being assigned with any other interests of Assignee in or to the real estate encumbered thereby.

IN WITNESS WHEREOF, American First Federal Inc. has caused the execution hereof this 29th day of DECEMBER, 2016.

American First Federal Inc.

By: _____

Title: _____

EXHIBIT "8" (1 of 2)

END OF DOCUMENT

STATE OF _Oregon_ )
                              )SS:
COUNTY OF _Clackamas_ )

Then personally appeared the above named _D'maxt Mick_ , the
___VP___ of American First Federal Inc., and acknowledged the foregoing instrument
to be his/her free act and deed and the free act and deed of Assignor, before me this _28th_ day
_December_ , 20 _16_ .

My Commission Expires:                                _Jim Peakes_
_8-10-17_                                              (written)           Notary Public
                                                       _Jennie Marie Peakes_
                                                       (printed)
County of Residence: _Clackamas_

This Instrument prepared by and return to: Reynold T. Berry, Attorney at Law, Rubin & Levin,
P.C., 135 N. Pennsylvania Street, Suite 1400, Indianapolis, IN 46204.

I affirm, under penalties of perjury, that I have taken reasonable care to redact each Social
Security number in this document, unless required by laws.  Reynold T. Berry



OFFICIAL SEAL
JENNIE MARIE PEAKES
NOTARY PUBLIC-OREGON
COMMISSION NO. 480379
MY COMMISSION EXPIRES AUGUST 10, 2017

2

EXHIBIT "B" (2 of 2)